PAUL v. MEEK.

1. The act of 1819, makes the "borrower or party" to a usurious contract, a competent witness to prove the usury; but this statute cannot be so construed, as to authorise the indorser or surety of the "borrower or party," when sued, to be a witness to prove the fact, so as to defeat a recovery against him.

2. "The borrower or party" being competent to prove the transaction illegal for usury, the *particular facts* to which he may testify, cannot be defined with precision, but must depend, to a great extent, upon the case itself.

3. It is allowable for a judge to charge the jury, that if they believe the testimony adduced, they should find a verdict for one of the parties, (designating which) : such a charge does not assume the decision of the facts.

WRIT of error to the County Court of Tuskaloosa.

This was an action of assumpsit by the plaintiff in error against the defendant, as the indorser of a bill of exchange for nine hundred and twenty-eight dollars, of which he was the payee, and John Meek, both drawer and acceptor. The cause was tried on the plea of *non-assumpsit*. On the trial, the plaintiff excepted to the ruling and instructions of the court. It appears that the plaintiff introduced the bill and protest, which recited that the defendant had been duly notified of its dishonor—and also, proved that the plaintiff's residence was the city of Tuskaloosa.— The defendant then offered himself as a witness, to prove that the bill was founded upon a usurious consideration; the plaintiff objected to his competency, but the objection was overruled, and the defendant permitted to give evidence. Thereupon, the defendant stated that the bill in question was given by John Meek, upon a settlement of large monied transactions had between the drawer and the plaintiff; that the drawer had also bought a piece of land of the plaintiff, and when the purchase became due, the time of payment was extended, and in consideration thereof, the drawer ageed to pay thirteen *per centum, per annum*, interest. Upon the settlement, the drawer transferred to the plaintiff a house and lot, and delivered him the bill, and the plaintiff at the same time admitted that the drawer had paid him a sum of money amounting to more than the principal and legal interest, lent and

95

advanced by him to the drawer. In fact, the plaintiff admitted that the bill was given for usury entirely.

The plaintiff then moved to exclude this evidence, which motion was overruled by the court; he then moved the court to exclude all the defendant's testimony, except so much as established the fact of usury; this motion was also denied. No further evidence was offered by either party.

The court charged the jury, that if they believed the testimony of the defendant, they must find a verdict in his favor. The questions of law arising upon this charge, as well as the several decisions recited, are duly reserved for the decision of this court.

CRABB, for the plaintiff in error, made the following points: 1. Before the defendant was allowed to give evidence, he should have submitted to the plaintiff a written statement of what he proposed to narrate, that the plaintiff might by denying its truth, as the statute directs, have excluded it. 2. The defendant was incompetent to testify in his own favor, because he does not appear to have been the borrower of the money, or the party from whom a higher rate than legal interest was taken. 3. If the defendant was competent, it was merely to prove the *fact* of usury; and the county court should have excluded his evidence as to other facts. 4. The charge of the court assumed as a legal conclusion, what was proved, instead of referring it to the jury to determine.

PECK & CLARK, for the defendant—insisted, that the first point was not presented by the bill of exceptions: the only question as it respected the defendant's testimony, was, whether he was a competent witness. The statute is not to have the restricted construction supposed; it embraced within its provisions, not only the borrower, or the person stipulating for the payment of usury, but the surety or indorser of such person also. If part of the defendant's testimony was inadmissible, the objection to it should not have been made *en masse*, but it should have particularly pointed out so much as was exceptionable; this not having been done, the court properly overruled the motion *in toto*. The charge of the court refers to the jury the credibility of the testimony, and informs them if they believe it, they should find for the defendant; there is nothing irregular in this.

COLLIER, C. J.—1. The first point made by the plaintiff's counsel, is not psesented by the record. The objection to the defendant's testimony docs not appear to have been, that the plaintiff had not been furnished with a written statement of the facts which he proposed to narrate; but it was to his competency generally.

2. The fourth section of the act of 1819, to regulate the rate of interest, declares, that any note or bond given on account of any usurious contract, shall be void; and that "the obligor or obligors," are made "competent witnesses to prove the usurious considera-tion of any such bond or bonds, note or notes." By the fifth sec-tion of the same statute, it is enacted that, "when any suit or ac-tion may be brought in any court of record in this State, touch-ing or concerning any usurious bond, specialty, promise or agree-ment, the borrower or party to such usurious bond, specialty contract, promise, or agreement, from whom such higher rate of interest is, or shall be taken, shall be a good and sufficient wit-ness to give evidence of such offence." [Clay's Dig. 590.]

The admission of a party to a suit, or of one who is directly in-terested in its determination, to give evidence in his own favor, is at variance with the common law; and a statute which introduces such a rule, should not be extended by construction beyond what was obviously intended by the legislature. Here it is said that "the borrower, or party to such usurious bond, &c. from whom such higher rate of interest is or shall be taken," shall be a wit-ness, &c. It is clear that none other than he who is a party to the transaction by which usury is taken or reserved, is made competent to prove the fact. If a contract would only be usu-rious in the case of a direct loan of money, or other thing, then the term "borrower," would have been sufficiently expressive of the meaning of the legislature; but the statute is one of very ex-tensive operation, and applies to all contracts, agreements, &c. by which a higher rate of interest than the law prescribes, is re-served. Hence it was thought necessary, in order to make the law harmonious and consistent in its provisions, and express with clearness, the legislative will, to declare, not only that one who was in ordinary parlance a *borrower*, but also a *party* from whom a usurious rate of interest should be reserved, was competent to prove the fact by his own evidence. This provision in the sta-tute was intended to discountenance usury, and to afford a facility

in proving it without a resort to equity to obtain a discovery, where other proof was not attainable. The reason of the enactment does not apply where the borrower, or party to the unlawful transaction is not sued; for if a surety, indorser, or other person in privity with the original party, is the defendant, the original party is competent, and may be examined as a witness to prove the usury. But it is needless to reason upon this point— the terms of the act are too explicit to require illustration.

3. It is unnecessary to consider the extent to which the "borrower or party, &c." may be permitted to give evidence under the act in question; but we would remark that he is only made competent to testify to the illegality of the transaction for usury. What particular facts constitute the offence, must depend more or less upon the case itself, and cannot be well defined within limits of general application.

4. It is entirely competent for a judge to instruct the jury, that if they believe the testimony adduced, they should find a verdict for the one party or the other. Such a charge does not trench upon the appropriate office of a jury. It does not assume the truth of the evidence; that is an inquiry expressly referred to their determination, and the court only declares what is the law upon a supposed state of facts. This is what is done upon a demurrer to evidence, and cannot operate more prejudicially to the plaintiff, than if the defendant had demurred.

As the evidence of the defendant in the present case was inadmissible, it is unnecessary to consider its effect, upon the hypothesis that it was regularly before the jury. The judgment must be reversed, and the cause remanded.