[Peoples Bank of Evergreen v. Robbins.]

# Peoples Bank of Evergreen *v.* Robbins.

*Bill for an Accounting and to Redeem from Mortgage Sale.*

(Decided April 21, 1910.   52 South. 412.)

1. *Mortgages; Assignment; Bona Fide Purchaser; Transfer.*— Where a chattel mortgage was assigned to the respondent bank, who returned it to the assignor for collection, with authority to the president of the assignor to renew all past due paper, and to include in the renewal any advances to be made for the ensuing year, the bank was not a purchaser for value of the renewed note and mortgage, including an amount which the assignor had agreed to advance to the mortgagor for the ensuing year, but which was never advanced so as to entitle it to recover more than the true indebtedness represented by the mortgage.

2. *Estoppel; Mortgage;*—Where complainant executed a chattel mortgage to a banking company in 1904, and in February 1905. owed on the same $182.45, less certain interests, and on that date renewed the 1904 mortgage in an amount fixed at $300.00, the excess to cover advances to be made for the year 1905, but the mortgagee becoming bankrupt, such advances were not made; and during 1904, the mortgage was transferred as collateral to the respondent bank and later turned over to the original mortgagee for collection for account of the assignee; and in March 1905, the mortgage was transferred to respondent bank, and in February 1906, that mortgage was taken up by another which was executed by complainant to respondent bank in the sum of $328.00, the respondent bank parted with no other value than that inhering in the surrender of the 1905 mortgage, ror which forbearance it was only entitled to interest at 8 per cent. on the true amount due, and complainant by executing the 1906 mortgage, was not estopped to question the sum for which the 1905 mortgage was given.

APPEAL from Conecuh Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by T. P. Robbins against the Peoples Bank of Evergreen, for an accounting, and redemption from mortgage sale. Decree for complainant and respondent appeals. Affirmed.

HAMILTON & CRUMPTON, and D. M. POWELL, for appellant. Having induced the bank for his accommo-

dation and to obtain indulgence to surrender up to him and cancel the original mortgage, complainant cannot now assert invalidity of the old mortgage and claim this as a reason for avoiding the payment of the renewed mortgage.—*Perdue v. Brooks,* 85 Ala. 459; *Palmer v. Severance,* 8 Ala. 53; *Gee v. Bacon,* 9 Ala. 699; *Tapscum v. Gipson,* 129 Ala. 503; *Cook v. Rome B. Co.,* 98 Ala. 409. Complainant cannot evade a renewal mortgage on the ground of failure of consideration or fraud when he knew at the time of its renewal of the fraud and such lack of consideration, and has kept in his possession the old mortgage without offer to surrender.—*Henderson v. Boyett,* 126 Ala. 172.

EDWIN C. PAGE, and FITTS & LEIGH, for appellee. Under the facts in this case the president of the assignor banking company was acting as agent of the respondent in taking the renewal, the acts were in the scope of his authority and the principal is bound thereby.—*Powell v. Wade,* 109 Ala. 95; *Williamson v. Tyson,* 105 Ala. 644. Notice to the agent was notice to the principal here.—*Goodbar v. Daniels,* 88 Ala. 583; *Cook v. Cook,* 28 Ala. 660. No purchase for value was shown.—*Reed v. Bank of Mobile,* 70 Ala. 199; *Moore v. Ensley,* 11 Ala. 228; *Hendon v. Morris,* 110 Ala. 106; 27 Cyc. 1053, *et seq.; Stork v. Henderson,* 30 Ala. 438.

McCLELLAN, J.—Bill by mortgagor against mortgagee for an accounting and to redeem upon payment, which he offers to do, of the averred true amount of the mortgage debt.

These facts must be taken, after careful review of the testimony, as established: Robbins, appellee (complainant below), executed in 1904 to the Evergreen Mercantile & Banking Company a mortgage on his crops

for that year and on his personal property. On February 16, 1905, Robbins owed the named company $108.-45, less the interest on the due sum, from that date to October 1, 1905. On that date he renewed the 1904 mortgage, but the amount was fixed at $300, the excess in amount being inserted in order to cover advances for the year 1905 agreed to be made to him by the company. On March 17, 1905, the company ceased to do business, being adjudged an involuntary bankrupt. The advances intended to be covered by the excess sum were never made. During the year 1904 the company became indebted to the People's Bank of Evergreen, and, as collateral security for that indebtedness, the Robbins mortgage of 1904, among other choses in action, was transferred to the bank. In August, 1904, this mortgage, with others so transferred to the bank, was turned over to the company "for collection" for account of the bank. It was not specifically controverted that "the understanding between the Evergreen Mercantile & Banking Company and the People's Bank of Evergreen was that the Evergreen Mercantile & Banking Company should renew all past-due papers, and let the papers include future advances to be furnished during the ensuing year." In March, 1905, the mortgage of date February 16, 1905, was transferred to the bank. On February 15, 1906, this mortgage was taken up by a mortgage, the foreclosure of which was enjoined in response to this bill, for $328, executed to the bank by Robbins.

The respondent (appellant) invokes two defenses against the relief sought by the bill and granted by the decree appealed from, viz., first, that it was an innocent purchaser for value and without notice of the mortgage for $300 of date February 16, 1905; second, that the complainant is estopped to controvert the sum for

which the mortgage of February 16, 1905, was given, viz., $300, for the reason that by the adjustment between appellee and appellant, evidenced by the mortgage of February 15, 1906, the sum due the appellant was fixed at $328, interest being added.

There can be no doubt on the evidence in this record that the relation created by the delivery of the 1904 Robbins mortgage to the company by the bank "for collection" for account of the bank was that of principal and agent, and that the bank conferred on Brooks, as president of the company, the authority generally to include a sum to cover advances for the year 1905 in handling pastdue paper. It also appears, with certainty, that the bank was fully aware of the character of business then being done by the company, viz., that of making advances, which, in our legal parlance, has acquired a definite meaning. Within the scope of the agent's authority knowledge of, or notice to, the agent is that of the principal.—*Wiley, Banks & Co. v. Knight*, 27 Ala. 336, 346; *Goodbar et al. v. Daniel*, 88 Ala. 583, 7 South. 254, 16 Am. St. Rep. 76. In the first case cited it is said: "* * * Upon general principles of policy, it must be taken for granted that the principal knows whatever the agent knows." The application in this instance of the principle just stated precludes the respondent from the benefit of the protection accorded innocent purchasers for value and without notice. Even if the respondent paid full value for the mortgage of February 16, 1905, by the application of its face value to the Bush Grocery Company note previously assigned to the bank, the bank, through its authorized agent, the company, was then charged with notice that, while the mortgage (of 1905) represented on its face an indebtedness of $300, yet, in fact, its real evidence of obligation, its consideration, was for approximately $100, unless the agreement

to make advances for 1905 was carried out—a condition never met, either by the company or the bank. Being so charged with notice of the paper's infirmity in the particular, indicated, the bank was not an innocent purchaser for value and without notice of the Robbins 1905 mortgage beyond the sum of the true indebtedness evidenced thereby.

The second defense, before stated, cannot be sustained. It does not appear that the surrender (by the bank to Robbins) mortgage of 1905 and the taking of the mortgage of 1906 wrought any impairment of the bank's security for the true sum really represented by the 1905 mortgage. Indeed, the complainant's offer to do equity by satisfying all real liability against him on account of the 1905 mortgage debt, and that being a condition to his relief as prayed precluded the possibility of respondent's suffering loss by reason of the surrender and cancellation of the mortgage of 1905. It is further shown, without dispute, that the bank parted with no value other than that inhering in the surrender and cancellation of the mortgage of 1905. At most, forbearance to enforce the payment of the 1905 mortgage debt was the effect of the arrangement and acts of the parties in canceling the 1905 mortgage, and in taking the mortgage of February 16, 1906. The legal limit of exaction for this forbearance was 8 per cent. interest on the true sum due when the last-mentioned mortgage was given and taken. Beyond that the contract would be usurious and unenforceable.—*Darden v. Schuessler,* 154 Ala. 372, 45 South. 130. Under the circumstances present in this case—the respondent not being an innocent purchaser without notice as indicated—it is obvious that the mortgagor was clearly within his rights when he invoked, and was sustained in, an investigation of the real con-

sideration for his obligation, being only accountable therefor.

For appellant we are referred, as bearing upon the stated second ground of defense, to five decisions of this court. We have considered each of them. *Perdue v. Brooks,* 85 Ala. 459, 5 South. 126, *Gee v. Bacon,* 9 Ala. 699, and *Palmer v. Severance,* 8 Ala. 53, were cases where, in effect, the payor or mortgagor induced a third party, ignorant of the fact that the contract was usurious, to part with value or to assume obligations in respect thereto. It was correctly held, of course, that the payor or mortgagor was estopped as against such innocent third person from asserting that the original contract was usurious. *Jackson v. Henry,* 10 Johns. (N. Y.) 195, 204, 6 Am. Dec. 328, also cited, belongs to the same class of cases as those referred to. To like effect, in principle, is the case of *Tapscott v. Gibson,* 129 Ala. 503, 30 South. 23, though there the payor undertook to assail the consideration of the note which he had induced the third party to purchase. *Cook v. Rome Brick Co.,* 98 Ala. 409, 12 South. 918, was an action by a materialman to enforce a lien for brick furnished to construct defendant's (appellant's) house. While the report of the appeal is not very satisfactory on this point, it seems that the defendant undertook to avoid loss by recouping damages for delay in completion of the structure consequent upon the failure of the plaintiff to deliver the brick promptly. Defendant had paid the contractors in full, less a sum equal to the demand of the plaintiffs, and had agreed to claim no damages for delay in completion of the building. The court held that defendant had cut himself off from the right to sustain recoupment on that ground. Among other elements differentiating *Cook v. Rome Brick Co.,* from the case at bar it will suffice to suggest this one:

[McIntosh v. Cooper, et al.]

That there the defendant was concluded by his acts against a claim for damages, whereas, here the complainant invokes inquiry into the consideration of an obligation purchased (we assume) by one charged, as before stated, with notice of its infirmity in that regard. *Cook v. Rome Brick Co.* is without bearing on the controversy here. *Henderson v. Boyett,* 126 Ala. 172, 28 South. 86, involved rescission of a contract, and announces the familiar rule of duty of the rescinder to place the adversary in statu quo. This case deals with a field of the law foreign to that in hand, viz., the right, unless an estoppel intervene, to inquire into the consideration of the obligation sought to be enforced.

We find no merit in the appellant's criticisms of the decree appealed from, and it is affirmed.

Affirmed.

Dowdell, C. J., and Simpson and Sayre, JJ., concur.